# COUNTY OF YORK.

———o———

SCHOOL DISTRICT NO. 5, *in Sanford, versus* ENOCH F. LORD, *Appellant.*

The right of possession in the plaintiff at the time of the taking or detention, necessary to maintain replevin, may follow either the general or special ownership of the property.

As between a school district and a stranger, the possession of their records by the clerk, is the possession of the district; and replevin may be maintained therefor in the name of the corporation against one not legally elected as clerk.

By the act of 1850, ch. 193, an agent of a school district is not authorized to call a district meeting upon his own motion, without the written application of three or more legal voters of the district.

An application to the selectmen to call a meeting of a district for the choice of officers, bearing date before the town meeting was held at which it should be determined whether the district would be permitted to exercise that right, is premature, and all action under it void.

This is an action of REPLEVIN, to secure possession of a book of records containing the records of school district No. 5, in Sanford, in said county, and belonging to the inhabitants of said district, and alleged to have been illegally taken and detained by said defendant, and comes forward on an agreed statement of facts, having been originally commenced before a justice of the peace. The defendants pleaded the general issue, and a brief statement, alleging that on the date of the writ, March 31, 1855, he was and is the legal clerk of said school district, and that he was chosen clerk of said district on the 19th of said March, at the annual meeting of said district, and was duly sworn, and that the custody and keeping of said book of records, at the date of said writ, belonged to him.

School District No. 5 *v.* Lord.

The annual town meeting of Sanford was holden on the 12th of March, 1855, at which it was voted that the several school districts should choose their own agents, and on the 13th day of March, 1855, Porter Willard, the agent of said school district, chosen as hereinafter stated, issued his warrant calling a meeting of the legal voters of said school district, to be holden at the school house in said district, on the 20th of March, 1855, for the purposes, among other things, of choosing a clerk and agent of said school district for the ensuing year, without any application in writing to him from three or more legal voters of said district; that due notice was given of said meeting, and pursuant thereto the legal voters of said district met, and chose John Shaw clerk, and Porter Willard agent of said district, who were severally duly sworn.

Subsequent to 1849 the district meetings had been called by the agent of said district, by a notice signed by such agent, and posted up as the law requires, every year to the present time, for the purpose of choosing a clerk and agent of said district, without an application in writing of three or more legal voters in said district, and at these meetings a clerk and agent had been chosen and duly sworn.

And before the commencement of this suit said John Shaw demanded of the defendant, Enoch F. Lord, the book of records belonging to said district.

Upon the *application* in writing of six of the legal voters in said district, dated *March* 10, 1855, directed to the selectmen of said town of Sanford, upon which two of the selectmen, being a majority, in the afternoon of the 12th day of March, 1855, and after the town meeting on that day was dissolved, issued their warrant to Hiram Witham, one of the inhabitants who signed said application, requiring him to notify and warn the inhabitants of said district qualified to vote in district affairs, to assemble at the school house in said district, on the 19th day of March, 1855, to choose a clerk and agent for the ensuing year; that said application to said selectmen was presented to them on the said 12th of

March, after they had been chosen and sworn; that it appears by the records of said meeting that said Witham gave due notice of said meeting, and that pursuant to said notice, a meeting was holden at the time and place appointed, and six persons attended, being the same who signed said application, a majority of the voters in said district not having actual notice or knowledge of said meeting; that at this meeting Enoch F. Lord was chosen clerk, and George Chadbourne agent, who were duly sworn.

It is agreed to submit this case to the full court for decision, upon the facts agreed, as above stated, and if, in the opinion of the court said John Shaw was the rightful and legal clerk of said school district at the time of the commencement of this suit, and that this action can be maintained in the name of said district for said book of records, then judgment is to be rendered for the plaintiffs for one dollar damages and costs. Otherwise the case is to stand for trial.

*N. D. Appleton* and *I. S. Kimball*, counsel for the plaintiffs.

I. The first question upon the agreed statement is this: Was John Shaw the rightful and legal clerk of said district at the commencement of this suit, he having been chosen at the district meeting, holden on the 20th of March, 1855, which meeting was called by a warrant issued by Porter Willard, the then agent of said district?

Willard being agent, as the case shows, it was made his *duty*, by the statute of 1850, ch. 193, art. 6, s. 1, in the month of March or April, annually, to call district meetings for the choice of agents and other business, by causing notice to be given as provided in the fifth and sixth sections of article second of the same act, the town having failed to choose school agents.

This *duty* Willard, the agent, performed by issuing his warrant on the 13th of March, 1855, the day after the town meeting was holden, calling a meeting of the district, to be

holden on the 20th of March, for the purpose of choosing a clerk and agent of said district. At this meeting said John Shaw was duly elected clerk and sworn. Said Shaw was, therefore, the rightful clerk of said district when this suit was commenced, unless the meeting called by the selectmen and holden on the 19th of March, (at which time the defendant was elected clerk of said district,) was legal, and authorized by the statute.

We contend that the meeting called by the selectmen was unauthorized.

The legislature having introduced a *new provision* in the act of 1850, making it imperative on the agent to call the annual meeting in the month of March or April, and making it his specific duty to do it, necessarily limited the power of the selectmen and restricted them in its exercise, until the agent had *refused* or *neglected* to perform his duty as required. In this case there was no delay or negligence on the part of the agent. He called the meeting the day after the annual town meeting, when it was ascertained that the choice of school agents was left with the districts. And the case shows, that for five years previous it had been usual to call the annual school district meetings soon after the annual town meeting, and in the same month.

Any other construction to the statute than this, would create a conflict of power between the selectmen and agents, and lead to confusion, uncertainty, and embarrassment. When the legislature made it the duty of the agent to call the annual meeting within a *certain fixed time,* it could never have intended that the same power should be exercised during the same period by the selectmen, and in construing statutes the intention is to prevail, if it can be ascertained.

And if there is an apparent inconsistency in different parts of the same statute, such a construction should be given as to reconcile the different provisions, if possible.

And if the general meaning and object of a statute should be inconsistent with the literal import of any particular clause or section, such clause or section must be construed

according to the spirit of the act. Dane's Digest, 6, 596; *Menden* v. *Worcester*, 10 Pick. R., 235; *Commonwealth* v. *Cambridge*, 20 Pick. R., 267; *Winslow* v. *Kimball*, 25 Maine R., 493.

It was undoubtedly the object of the legislature, by this new provision in the act of 1850, to secure greater regularity and uniformity in the proceedings of school districts than had before existed, and to insure greater punctuality in calling annual district meetings, by making it the duty of the agent to attend to it within a specified time. And the practical operation and effect has been found useful and beneficial.

The general authority of the selectmen to call meetings of the districts on other occasions, and in special cases, where there is no agent, or he neglects his duty, is proper and necessary, and was intended to apply and be exercised so as not to interfere with that of agents. Besides, the language of the fifth section of article two does not require selectmen to perform this as a *duty*, but says that district meetings " *may be called*" by them, &c.

But the legislature has removed whatever doubt might exist in relation to this matter, by an act entitled an act explanatory of section five, article two, of the act to provide for the education of youth, passed March 25, 1856. By this act, " school district meetings, on the application of three or more of the legal voters in such districts, respectively stating the name and objects of the proposed meeting, may be called by the town containing such district, whenever the agent or agents of such district, if any have been appointed, shall neglect or refuse so to do."

This explanatory act shows conclusively what the intention of the legislature was. It is not an alteration of the previous law, but an exposition or interpretation of it.

II. This action of replevin can be maintained in the name of the district. The case finds that the book of records replevined belongs to the plaintiffs, and they having the right of property in it, are entitled to recover in this action.

School District No. 5 v. Lord.

*Stebbins* v. *Jennings,* 10 Pick. R., 172; *Sawyer* v. *Baldwin,* 11 Pick. R., 492. This was replevin for church records, and sustained. *Sudbury* v. *Stearns,* 21 Pick. R., 148. This case was trover for the book of records of the first parish in Sudbury. Moreton, J., in delivering the opinion of the court, says, we have no doubt that either trover or replevin will lie in this case, and cites 11 Pick. R., 492. The *property* of the records is in the parish. The clerk is the officer designated by law to hold and keep them; and if any stranger gets possession of them, the parish may take them from him by the proper action, or recover damage for their destruction or detention. *Ingraham* v. *Morton,* 15 Maine R., 373.

If it is said that it appears by the case, that the agent who was chosen in 1854 was not legally chosen agent, because not elected at a district meeting called on the application of three legal voters, and so not authorized to call the meeting in April, 1855, even if there had been an application in writing to him by three or more voters in the district, our answer is, that that meeting of 1854 was called by John Shaw, the agent of the previous year, chosen at the annual meeting in 1853, and who had also been chosen at the previous meetings in 1852 and 1851, as agent of the district; that being agent for three years, and acting as agent, and coming into office under color of an election, he was agent *de facto,* and that his acts are valid; and that Willard, who was chosen in 1854, and duly sworn, was agent *de facto,* and as such could call the meeting in 1855. *Brown* v. *Lunt,* 37 Maine R., 423, and cases there cited; *Tucker* v. *Aiken et als.,* 7 N. H. R., 113.

In reply to the argument of the defendant, we say that the case shows, that subsequent to 1849 the annual meetings for the choice of officers had been called by the agents of the district, and that subsequent to the law of 1850, the annual meetings had been called by the agents, in pursuance of art. 6, s. 1, of the law of 1850, which, we say, makes it the *duty* of the agent to call district meetings in the month of March

or April, of his own motion, without any application from the voters of the district, and that since the law of 1850 the selectmen have not the *concurrent* power to call such meetings, unless the agent *refuses* or *neglects* to do it.

The statute authorizing selectmen to call district meetings, by art. 2, s. 5, makes it *discretionary* with them to call such meetings, and provides that the three legal voters applying to them to call a meeting should state the *reasons* for calling the same, as well as the *objects* of the proposed meeting.

The object of the law of 1850 was to insure the organization of the school districts, by having agents and clerks chosen within a fixed period, and hence it imposed it as a *duty* on agents to call such meetings within such limits as the statute provides. But if this duty was neglected, or if the agent refused to call the annual meeting, then and then only could the selectmen have power to interfere, and on the application of three legal voters, to supply the omissions of the agent. The authority of the selectmen extends also to occasions when *special* meetings are required or desired by the voters of the district, and the agent, on application to him, refuses to call a meeting.

The difficulties to be avoided by our construction of the statute are apparent, and are shown by the facts in this case. The case shows, that there are now two distinct organizations in this district, where there were in 1855 but twenty-two legal voters; that a minority of six of them applied to the selectmen for a warrant, and caused the notices of the meeting called by the selectmen to be so posted up, as that a majority of the district had no notice in fact of the meeting, and evidently intending to steal a march upon the agent and a majority of the district, and thus get officers not the choice of the district. This *first meeting*, as the counsel term it, we say, was a fraud upon the district, called and notified secretly, and at a time when the agent had omitted no part of his duty as required by the act of 1850, for he moved in calling the annual meeting as soon as he could reasonably be expected to do, by calling the district meeting and issuing

his warrant therefor, the day after the town meeting was dissolved.

Such a construction should be given to the statute in relation to this matter, as to prevent the occurrence of such difficulties and sinister designs as this case develops.

The case of *Fletcher* v. *Lincolnville* is not applicable to this case, because the duties prescribed by the statute of 1834, and adopted in the Revised Statutes, to school agents, were different from those of the statutes of 1850. That decision was right as the law then stood, but a new provision was introduced into the law of 1850, which makes it the *duty* of agents to call school meetings in March or April of each year, without requiring a written application from three or more voters of the district.

As to the "explanatory" act of 1856, commented on by the counsel, we have only to say, that the court is always desirous to put such a construction on legislative acts, as will carry out the *intention* of the legislature. And if there was any doubt or ambiguity in the language of the statute of 1850, (which we deny,) it was very proper for the legislature to remove them by an explanatory act.

It is proper to add, that this *exlpanatory* act was passed without the *knowledge* of the *counsel for the plaintiffs* in this case, or any person connected with it.

*Asa Low*, counsel for the defendant.

1. The plaintiffs must have had a right to the possession of the property at the taking or detention of the same. *Gates* v. *Gates*, 15 Mass. R., 310; *Baker and als.* v. *Falls*, 16 Mass. R., 488; *Collins* v. *Evans*, 15 Pick. R., 63; *Wheeler* v. *Train*, 3 Pick. R., 255.

The district in their corporate capacity had no right to possession of the book of records mentioned in the plaintiff's writ. The possession belonged to the legal clerk. If that person was John Shaw, as is contended by the plaintiffs, and which we deny, he, and he alone could maintain an action of this kind. Replevin lies for a book of records, but it must

be brought in the name of the person that has the right to the legal custody of the records, the proper officer in whose custody the records belong. *Sawyer* v. *Baldwin*, 11 Pick. R., 492; *Baker and al.* v. *Falls*, 16 Mass. R., 488.

The R. S., ch. 130, s. 8, says, " When any goods shall be unlawfully detained from the owner or the person entitled to the possession thereof, &c., may be replevined," thus clearly showing that the person who has the right to the possession should bring the suit. A person or corporation may be the owner of personal property, but not have the right to the possession. Therefore, I contend this action cannot be maintained in the name of the district.

2. The great question in this suit is, who was clerk of this district at the time this suit was commenced, John Shaw, or the defendant, or, according to the agreement in this case, was John Shaw the rightful and legal clerk of the district at the time?

The defendant was chosen at the first meeting held in the district for the year 1855, which meeting was a legal meeting, called according to law. Was not he the clerk of the district?

The statute of 1850, ch. 193, art. 2, s. 5 and 6, gives the mode of calling school district meetings, and the manner of notifying. They may be called by the selectmen of the town upon the application of three or more of the legal voters of said district.

The meeting at which the defendant was chosen was called in this way; and being the first meeting held in the district for the year, the time prescribed by law for choosing a clerk. Statute of 1850, ch. 193, art. 2, s. 8.

We say John Shaw was not the rightful and legal clerk of said district; first, because the defendant was the legal clerk, chosen on the 19th of March, 1855, and he would hold his office during the year ensuing. Second, because the meeting at which said Shaw purports to have been chosen, was not called pursuant to law; that is, there was no application in writing from three or more legal voters in the district.

An agent cannot call a legal meeting without such application. *Fletcher* v. *Lincolnville,* 20 Maine R., 439; Laws of 1850, s. 5 and 6, above referred to. And we say that Porter Willard was not the legal agent to call such meetings, if he had had an application, because the meeting at which he was chosen in 1854 was called without such application as the law required. Neither had there been any legal meeting for the choice of officers since 1849. Therefore there was no agent to call a meeting, and no legal meeting could be called except by the selectmen. And John Shaw could not be the rightful and legal clerk of the district. Statute of 1850, ch. 193, art. 6, s. 1, defines the powers and duties of school agents. First, in the month of March or April annually, to call district meetings for the choice of agents, and for other business, by causing notice to be given as provided in the 5th and 6th sections of article 2 of this act. The said 5th section providing for the application; then it is his duty to call the meeting according to the 6th section referred to.

Then, we say, if the agent did have the power to call the meeting without an application, it did not take away the power of the selectmen to call a meeting upon an application in writing of three or more legal voters in the district.

And as the meeting called upon the 19th of March, A. D. 1855, which was duly organized by the choice of a moderator, and the defendant chosen clerk and duly sworn, would be a bar to the choice of John Shaw as clerk, chosen on the 20th of said March.

Therefore, if an action of this kind in other cases could be maintained in the name of the district, according to the agreement of the parties, John Shaw, not being the rightful and legal clerk of the district at the time the suit was commenced, judgment should not be rendered for the plaintiffs, but the case should stand for trial.

This case should be decided according to the law of 1850, above referred to; that the act of 1856, ch. 225, although it is headed an explanatory act of ch. 193, above referred to, is ana mendment to the law of 1850, entitled " of the education

of youth." That the expounding of the laws of this state belong to this court, and not to the legislature.

RICE, J. Replevin to recover possession of the records of the district alleged to have been unlawfully taken and detained by the defendant. To maintain replevin there must have been a right of possession in the plaintiffs at the time of taking or detention. That right may follow either the general or special ownership of property. That the general property in the records in dispute was, and is, in the plaintiffs, is not controverted; but it is asserted by the defendant that he is clerk of the district, and in that capacity has a special property in the records, and the right to their custody and possession; and further, if he should be adjudged not to be the legal clerk of the district, then he contends that the right of possession is in one Shaw, whom the plaintiffs affirm to be the legal clerk; and therefore, in either case the action cannot be maintained.

The clerk is the officer and servant of the district. As between the district and a stranger, the possession of the records by the clerk is the possession of the district, and replevin may be maintained in the name of the corporation. *First Parish in Sudbury* v. *Stearns*, 21 Pick. R., 148. If the question of right to possession should arise between the district and their legally elected and qualified clerk, the result would be different. The action is therefore rightfully brought, and may be maintained, if the defendant was not the legal clerk of the district.

By s. 3d, art. 1, ch. 193, laws of 1850, it is provided that any town at its annual meeting for the choice of town officers, may vote to choose, and in such case shall choose an agent for each school district in such town.

By s. 10, art. 2, every school district, at its annual meeting, shall choose by ballot a school agent, unless such agent shall be chosen by the town, as provided in article first, section third.

Section 5, in article 2, provides that school district meet-

ings, on the written application of any three or more legal voters in such districts, respectively, stating the reasons and objects of the proposed meetings, may be called by the selectmen of the town containing such district; or by the school district agent or agents, if any have been appointed.

Section six points out the manner in which the selectmen or district agent, as the case may be, shall give notice, " on receiving any such application."

Article 6, s. 1, provides that the duties and powers of school agents shall be as follows :

*First.* In the month of March or April, annually, to call district meetings for the choice of agents, and for other business, by causing notice to be given as provided in the fifth and sixth sections of article second of this act.

The plaintiffs contend that this last section authorizes agents to call meetings of the district in the months of March or April, on his own motion, and without the written application of three or more of the legal voters of the district. The whole statute must be construed together, and if practicable, force given to all its provisions. The agent is directed to call meetings in March or April, by giving notice *as provided in the fifth and sixth sections of article second of this act.*

Section fifth, already cited, authorizes the calling of meetings on the written application of three or more legal voters, by the selectmen or school agent, and section sixth prescribes the manner in which notice shall be given on the receipt of *such written application,* by the selectmen or agent.

By this reference we think it is manifest that the legislature intended that the agent should be governed by the provisions contained in the fifth section, as well as those contained in the sixth, when he assumes to act; otherwise the reference to the fifth section is wholly unmeaning.

The statute provides two modes in which the meetings of school districts may be legally called, and as it stood before the passage of the act of 1856, ch. 225, did not give one

mode precedence over the other. The result is, that where both modes were resorted to by different parties in the same district, to accomplish the same objects, the meeting which was first legally held had the precedence. Since the passage of the act of 1856, no such opportunity for conflicting meetings has existed.

It is contended by the plaintiffs, that the act of 1856, ch. 225, was intended to be explanatory of the provisions of the act of 1850, ch. 193, which we have already cited, and should control its construction. Such doctrine is inadmissible. Legislatures enact laws—courts expound them.

Those meetings of the district which have been called by the school agent, on his own motion, without the written application of three or more legal voters of the district, were not called in conformity with the requirements of the statute, and the acts of officers chosen at such meetings would be binding only as the acts of officers *de facto*.

The defendant does not show a legal election. The application to the selectmen to call the meeting at which he was elected, appears to have been in due form, but it was premature, bearing date two days before the town meeting was held, in March, at which it would have been determined whether the town would elect school agents, or permit the several school districts to exercise that right, and apparently before the selectmen were chosen who assumed to act upon that application. Any action upon that application was, under such circumstances, inoperative and void. According to the agreement of the parties, the action must stand for trial.

TENNEY, C. J., APPLETON, CUTTING, MAY and DAVIS, J. J., concurred in the result.