## Case No. 5,387.

GIBBS v. USHER et al.

[Holmes, 348.][1]

Circuit Court, D. Massachusetts. March, 1874.

CIRCUIT COURTS—JURISDICTION TO RESTRAIN MARSHAL—REPLEVIN FOR WRITINGS AND DOCUMENTS.

1. The circuit court has jurisdiction in equity on bill or petition filed, and proper case made, to restrain the use of its process by the marshal in a manner contrary to law.

[Cited in Re Sabin, Case No. 12,195.]

2. Under the General Statutes of Massachusetts, replevin lies in that state, and therefore by the practice act of 1870 (17 Stat. 196), in the circuit court for the district of Massachusetts, for writings or documents of value unlawfully detained.

[Cited in Hower v. Weiss Malting & Elevator Co., 55 Fed. 359.]

Motion for preliminary injunction. The bill of complaint charged that Mr. Joy, an attorney, pretending to act for one David Bowlas, of England, sued out a writ of replevin in this court, in the name of said Bowlas, against [W. H.] Gibbs, the complainant, residing at Clinton, Massachusetts; that said Joy went to the house of the complainant, with the defendant Shaw, a deputy of the marshal (the defendant [Roland G.] Usher), and others, and asked in a friendly way to see certain papers, without saying that Shaw was an officer, or that they had a writ; and that when the papers were shown them, they seized them, and afterwards fraudulently altered the writ by adding a description of some papers already seized; that the papers seized were the private papers of the complainant, and that neither said Bowlas, nor any one else except the complainant, had any right or title thereto; that they related to the private transactions of the complainant with other persons in matters of business, which he was bound not to make public, and the publication of which might work great injury to the business interests of the complainant

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

and others; that he believed the pretended plaintiff in replevin to be dead, and that the object of the seizure was to obtain for the said attorney and others an inspection of the complainant's private papers; that the publication of the papers would be an irreparable injury to the complainant; that the papers were not subject to be replevied; and that the writ was void for several other reasons. The prayer of the bill was, that the marshal and his deputies be restrained from exhibiting or delivering the papers to any person but the complainant, and be ordered to deliver them to him; and that the further prosecution of the writ of replevin be stayed. Upon the motion for a preliminary injunction, affidavits were filed tending to support the charges in the bill as to the mode in which the papers were obtained, and the charge that the writ was altered after the seizure. On the part of the defendants, it was contended, and there were affidavits tending to show, that the David Bowlas, plaintiff in replevin, was living, and was the only son of the David Bowlas mentioned in the bill, and carried on his business; that David Bowlas (the elder) was the owner of a certain English patent by assignment from the original inventors; that certain persons were sued in this court for an infringement of this patent, taken out in this country in the names of the original patentees; that the defence, or part of it, was, that the supposed infringers bought the infringing machines from Bowlas, the owner of the patent; that Gibbs had been intrusted by Bowlas (the elder) with the original assignment and some other papers, and had refused or neglected to return them to the son, though requested; that they were needed in the defence of the suits above mentioned, and that Mr. Joy had an order for them from Bowlas, the younger; that when the parties called on the complainant they exhibited to him the order from Bowlas; and that, although some alteration was made in the writ, it was before they considered the writ to have been served.

H. F. French, for plaintiff.

1. The writ of replevin is void for not alleging the citizenship of the parties, and for other imperfections.

2. Private papers are not replevible. Brent v. Hagner [Case No. 1,839]; Maxham v. Day, 16 Gray, 213; Mack v. Parks, 8 Gray, 517; Oystead v. Shed, 12 Mass. 510.

3. If the seizure was fraudulent, the court will not allow the defendants to derive any advantage from it. Deyo v. Jennison, 10 Allen, 410; Parsons v. Dickinson, 11 Pick. 352.

B. F. Butler and A. K. P. Joy, for defendants.

1. The court has no jurisdiction of this bill.

2. The plaintiff has proved no title to the papers. Clapp v. Shephard, 23 Pick. 228.

3. Replevin lies for writings. Sawyer v. Baldwin, 11 Pick. 492.

LOWELL, District Judge. The jurisdiction of the circuit courts, in equity, of a bill or petition to restrain the marshal from attaching on a writ out of this court, B's property in a suit against A, though both the marshal and the complainant live in the same district, is clearly laid down in Freeman v. Howe, 24 How. [65 U. S.] 460; and is almost a necessary corollary from the law of that case, which was, that no other court had any right to interfere with the marshal's possession. The principle will extend to any case in which the process of the court is made use of contrary to law, if the judgment in the action at law will afford no adequate redress. For example, if it were proved that the marshal, under color of a precept of this court, was about to inflict an injury not warranted by his writ, and yet one which could not be compensated for in damages, the court might, on bill or petition, and perhaps on motion, interfere to arrest the evil.

That a court of equity may restrain the service of a writ. I think equally clear, as a general proposition. I once brought a bill in the supreme judicial court of Massachusetts, to restrain the service of a writ of personal replevin, by which it was sought to release a patient from a lunatic asylum. The case was of novel impression; but I proved that the injury might be irreparable, and I tendered the same issue in the bill that would be raised by the writ, that is, the issue of sanity. I had already a prima facie case, because the same court had refused to release the patient on habeas corpus; and, under the Massachusetts practice, issues can always be ordered in an equity suit to be tried by jury. Under these circumstances, I obtained the injunction, although a writ of personal replevin is undoubtedly a writ which issues as a matter of course in ordinary cases.

It is argued that replevin does not lie for private papers, the statute only mentioning "goods." Gen. St. c. 143, § 10. How extensive the meaning of the word "goods," or "goods and chattels," is to be understood in any instance, must depend on the subject-matter and the context. "Goods" may include every thing but what descends to the heir. Com. Dig. "Biens," C, D; Dane, Abr. c. 13, art. 3, § 1. Choses in action may pass by that name. Ford & Sheldon's Case, 12 Rep. [Coke] 1; Ryall v. Rowles, 1 Ves. Sr. 348. That replevin is the remedy in Massachusetts, if there be any at all, is clear, because detinue long since fell into disuse; and since 1852 there have been only three forms of personal action, contract, tort, and replevin. One of the reasons for the change was, that replevin was so administered as to take the place of detinue. See Badger v. Phinney, 15 Mass. 362; Baker v. Fales, 16 Mass. 154; Esson v. Tarbell, 9 Cush. 407. By the act of 1823, c. 140 (9 Stat. 399), jurisdiction in equity was given to the supreme judicial court to compel

delivery to the owner of any goods, chattels, deed, bond, note, bill, specialty, writing, or other personal property, that was so taken or detained that it could not be replevied. When the statutes were revised, all the description of property after the word "chattels" was omitted, not to narrow, but to enlarge, the meaning, the commissioners reporting that "goods and chattels" would cover more than any possible or practicable enumeration. Rev. St. c. 81, § 8, and report of commissioners thereon; Gen. St. c. 113, § 2.

It is clear, then, that replevin will lie in this state whenever detinue might have been brought at common law. Some remarks of text-writers seem to imply that detinue only lies for deeds that attend the inheritance. 1 Chitty, Pl. 122; 1 Saund. Pl. & Ev. (2d Ed.) 987. But Fitzh. Reg. Brev. 159b, mentions deeds, writings obligatory, &c., and any "cyrographum," which, Du Cange says, means "chirographum," and that means, I suppose, any writing. One meaning is a note of hand. Valpy, Etym. "Chirog." That such is the scope of detinue at present, and of replevin in Massachusetts, hardly needed so much argument: the cases are decisive. See Myers v. Friend, 1 Rand. [Va.] 12; Todd v. Crookshanks, 3 Johns. 432; Cummings v. Tindall, 4 Stew. & P. 357; Sawyer v. Baldwin, 11 Pick. 492; Parish in Sudbury v. Stearns, 21 Pick. 148; Mills v. Gore, 20 Pick. 28; Clapp v. Shephard, 23 Pick. 228; School Dist. v. Lord, 44 Me. 374; Savery v. Hays, 20 Iowa, 25. The authorities cited for the complainant show that such writings cannot be attached on mesne process; but that is not germane to the question whether the owner can recover them by replevin.

It was assumed by both parties that the late practice act of the United States adopts the forms of action now in force in the state, and if so, replevin, and not detinue, is certainly the true form in the circuit court. I therefore proceed to consider the merits of the motion for a preliminary injunction. Two questions are to be answered: 1. Did the plaintiff in replevin, or his attorney, obtain possession of the papers in such a way that equity will not permit him to hold them? 2. Are they papers clearly belonging to the defendant in replevin the publication of which might be scandalous or injurious?

Taking the latter point first:—The only paper which is held under the writ is an indenture which purports to be signed and sealed by Ellis & Sladdin, and to assign to David Bowlas certain letters-patent, and the invention itself therein mentioned, and all other patents and extensions which the grantors may obtain on account thereof. I do not find Mr. Gibbs's name mentioned in this deed, nor is there any evidence connecting him with it, excepting affidavits which tend to show that it was lent him for some purpose, perhaps for a like purpose to that for which it is now needed by other persons. There is nothing in the paper itself, nor in the evidence, to bear out

the assertions of the bill, that the paper is his property, that it is a private paper in any sense except that it is the private property of some one, and apparently of Bowlas, or that its publication can injure Mr. Gibbs, or any one else. On the contrary, it seems to be of record in England, and to be intended for publication. All the evidence tends to show that the equities set up in the bill are untrue in fact, and there is nothing which proves, or tends to prove, that any of the asserted mischiefs can attend the execution of the writ.

On the other point, I am relieved from some part, and the least agreeable part, of the inquiry; because, if the writ was altered after the service, it was to insert some papers which the marshal, as I am informed, has returned to the complainant in equity: at all events, they are not in his possession, and were not so when this bill was brought. The indenture was fully described in the writ, and the only evidence which applies to this paper is that Gibbs was not notified of the writ before he was induced to produce the paper. This is not a sufficient reason for a court of equity to interfere, without something more to complain of. The evidence tends to show that the attorney had an order for the papers from the true owner, and had a right to see them, and to carry them away. No false statement was made to Gibbs; and the suppression of truth does not seem to be any thing like a fraud. I agree entirely with the cases cited, which hold that an attachment made by fraud or force shall be void; but in these cases positive rights were infringed, and the title set up by the creditor was derived through his own wrong. Here Mr. Gibbs has shown no title beyond the fact of possession, which is explained by the affidavits, and a bare assertion that these are his private papers, whose publication will be very injurious, an assertion which the indenture itself refutes. If he had refused to deliver the indenture on demand, I suppose a bill in equity would lie to enforce the delivery; and a court of equity will not dismiss a suit at law when the only result will be to require a new suit for the same cause in equity, the courts having concurrent jurisdiction, and there being no special reasons for the interference of equity rather than law. Motion denied.